UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

YARBORO SALLEE,             )
                                )
        Plaintiff,        )
                                )
v.                            )     No. 3:15-CV-5
                                )     Phillips/Guyton
BOARD OF PROFESSIONAL   )
RESPONSIBILITY OF THE     )
SUPREME COURT, *et al.*,      )
                                )
        Defendants.      )

## <u>MEMORANDUM OPINION</u>

Ten motions to dismiss [Docs. 4, 6, 10, 12, 15, 17, 19, 21, 24, 28] are pending in this civil action.[1]  Plaintiff requested and was granted an extension of time to respond to all of the pending motions [Doc. 32]; however, she has failed to respond to any of them and the time for doing so has passed.  She has, accordingly, waived her opposition to the relief sought.  *See* E.D. Tenn. L.R. 7.2.  The Court has carefully considered the pending motions, along with their supporting memoranda [Docs. 5, 7, 11, 13, 16, 18, 20, 22, 25, 27, 29], and the motions are ripe for determination.

Also pending in this case is the plaintiff's request for an injunction [Doc. 30] to which the Tennessee Board of Professional Responsibility and defendants Garrett, Jones, Vick, Willis, and Balkwill have responded [Doc. 33].  Plaintiff has not submitted a

---

[1]Defendant Howard Hogan's motion to dismiss [Doc. 2] remains pending and will be resolved by separate order.

further reply in support of this motion and the time for doing so has passed. *See* E.D. L.R. 7.1(a), 7.2.

## I.    <u>Relevant Facts</u>[2]

Plaintiff Yarboro Sallee is an attorney licensed to practice law by the State of Tennessee [Doc. 1 at ¶ 15].  The Tennessee Board of Professional Responsibility ("TBPR" or the "Board") is a board created by the Tennessee Supreme Court to govern the disciplinary enforcement of Tennessee attorneys.  Tenn. S. Ct. R. 9, § 4; [Doc. 1 at ¶ 11].  Defendants Sandy Garrett and Nancy Jones are respectively the current and former Chief Disciplinary Counsel of the TBPR [*Id.* at ¶ 12; Doc. 18 at p. 2].  Defendant James Anthony Vick is the Deputy Chief Disciplinary Counsel and defendants Kevin Balkwill[3] and Russell Willis are Disciplinary Counsel with the TBPR [*Id.*].  Collectively, the Court will refer to these defendants as the "TBPR defendants."

Plaintiff's complaint is not a model of clarity.  Several of the defendants have submitted documents from state court proceedings which help clarify some of the events and claims raised in the complaint.  While matters outside the pleadings are generally not considered in ruling on a Rule 12(b)(6) motion, the Court has reviewed these documents, submitted with the defendants' motions to dismiss, because they are public records from

[2]For the purposes of a motion to dismiss, the Court takes the factual allegations in the complaint [Doc. 1] as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint").

[3]Defendant Balkwill has been misidentified in the complaint as "Kevin Ballkiwell."  The record will be corrected to properly identify Mr. Balkwill and the Court will refer to him as such in this opinion.

2

the disciplinary proceedings and litigation that plaintiff has specifically referenced in her complaint. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014); *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (a court may consider public records when deciding a motion to dismiss). Using these additional materials only for the purpose of making sense of the complaint, the Court will endeavor to outline the relevant facts and events.

Plaintiff claims that, at an unidentified time in the past, she filed a successful complaint with the Equal Employment Opportunity Commission ("EEOC") against the State of Tennessee and certain state agencies and that she has been involved in prior litigation "against or involving state departments and against the politically powerful Tennessee politicians in both state and federal courts which culminated in a substantial settlement for plaintiff" [*Id.* at ¶¶ 16—17]. Plaintiff claims that she has been subject to retaliation and harassment for these prior claims and for her public criticism of elected officials [*Id.* at ¶ 17]. Specifically, plaintiff claims that the TBPR and other defendants began filing baseless ethics complaints against her [*Id.*]. It appears that these allegations are presented as background information and perhaps to identify alleged motivations for the current complained-of acts.

Plaintiff represented defendants Frances Rodgers and Vearl Bible in several cases arising from the death of their adult daughter, including a wrongful death action in Knox County Circuit Court and an interpleader action over life insurance proceeds in Knox County Chancery Court [*Id.* at ¶ 18; Doc. 17-1 at pp. 1—2]. Defendants Rodgers and Bible eventually terminated plaintiff and requested their file from her, but she withheld

3

the file claiming unpaid fees [Doc. 17-1 at p. 3]. Defendants Rodgers and Bible hired defendant Larry Vaughan, also a private attorney, to obtain their file and to represent them in the actions initiated by plaintiff [*Id.* at p. 3; Doc. 19-1 at p. 2]. A "global" settlement was eventually reached in the wrongful death case and the interpleader action [Doc. 24-1 at p. 2]. Plaintiff claims that defendant Vaughan acted in concert with the TBPR defendants to steal the fees she earned from the wrongful death case and redistribute them to defendants Vaughan, Rodgers, and Bible [Doc. 1 at ¶¶ 18—19].

Defendant Vaughan also filed suit in the Knox County Circuit Court on behalf of Rodgers and Bible to recover the fees paid to plaintiff as well as for punitive damages [Doc. 19-1 at p. 2]. A default judgment was entered against plaintiff and the case was appealed to the Tennessee Court of Appeals [*Id.* at p. 3]. In a February 13, 2015 opinion, the Court of Appeals concluded that the trial court should have ruled on a motion to recuse before entering other orders and remanded the case for further proceedings [*Id.* at pp. 8—9].

An ethics complaint was filed in 2011 against plaintiff arising from her representation of defendants Rodgers and Bible [Doc. 17, Exs. 1—3]. A hearing panel imposed a one-year suspension on plaintiff for several ethical violations and plaintiff appealed that decision to the Knox County Chancery Court [*Id.*, Ex. 1]. The Chancery Court affirmed the decision of the hearing panel and plaintiff appealed the decision to the Tennessee Supreme Court, where it is currently pending [*Id.*, Exs. 2—3].

Plaintiff claims that the TBPR defendants filed a baseless ethics petition against her and misrepresented the facts so as to convince the panel that she had committed

4

ethical violations [*Id.* at ¶¶ 20—21]. Plaintiff claims that she has been subjected to 13 baseless ethics complaints solicited by the defendants over the last eight years [*Id.* at ¶ 23]. Plaintiff claims that the TBPR defendants "engaged active cronyism and protectionism" by not investigating complaints about other attorneys [*Id.* at ¶¶ 24—25]. Plaintiff claims that defendant Jones "admittedly solicited the false complaint filed by defendant Larry Vaughan" [*Id.* at ¶ 26]. Plaintiff further claims that the TBPR defendants "engaged in a pattern of propaganda and bullying against any attorney hired … to represent her" and that her attorney was intimidated and threatened into withdrawing from representing her [*Id.* at ¶ 28]. Plaintiff claims the TBPR defendants "engaged in the falsification of evidence and the destruction or ignoring of supporting evidence" for her in an "attempt to run plaintiff out of the practice of law" and "to steal her rightful liens" [*Id.* at ¶ 29]. Plaintiff claims the defendants "engaged in … blackmail … to force her to release perfected and earned liens" in exchange for the dismissal of the false ethical charges [*Id.* at ¶¶ 31—32]. Plaintiff cites as an example false allegations that she withheld portions of a file from defendants Rodgers and Bible [*Id.* at ¶¶ 33—34].

Plaintiff claims defendant Jones instructed defendant Balkwill to sign a petition against her even though Mr. Balkwill admitted that he had not investigated, written or recommended that a petition be filed against plaintiff [*Id.* at ¶ 36]. Plaintiff claims defendant Willis has apologized to her by stating that he did not agree with the petition against her, but he was ordered to proceed against her without justification or cause [*Id.*].

Plaintiff claims that former Knox County Circuit Judge Harold Wimberly held a hearing in a case against her, presumably the case by Rodgers and Bible to recover fees,

when he knew plaintiff was not given notice and could not defend herself [*Id.* at ¶ 37]. Plaintiff complains that Judge Wimberly did not set aside the judgment against her, did not apply the correct law or procedures, failed to bifurcate a hearing into "general and punitive damage" (which may be the same allegation as failing "to hold three separate hearings, one for causality and one for general damages and one for punitive damages"), and created a false court record that placed her in a fraudulent negative light [*Id.* at ¶ 37]. Plaintiff also claims that Judge Wimberly was aware of a pending settlement which "obviated" the lawsuit against her by defendants Vaughan, Rodgers, and Bible [*Id.* at ¶ 38].

Plaintiff claims that Knox County Circuit Court employee Frankie Holt[4] interfered with the filing of documents, destroyed and withheld documents from proper filing, and illegally removed documents from the court record to benefit defendants Vaughan, Rodgers, and Bible [*Id.* at ¶ 39].

Plaintiff claims that Knox County Chancery Court Clerk & Master Howard Hogan and Knox County Circuit Court Clerk Cathy Shanks[5] agreed to disburse money deposited by plaintiff in an escrow account without paying her perfected liens on the funds [*Id.* at ¶ 40].

---

[4]Ms. Holt was misidentified in the complaint as "Frankie Holtz" [Doc. 1 at ¶ 13]. The record will be corrected to properly identify Ms. Holt and the Court will refer to her as such in this opinion.
[5]Ms. Shanks was misidentified in the complaint as "Kathy Shanks" [Doc. 1 at ¶ 13]. The record will be corrected to properly identify Ms. Shanks and the Court will refer to her as such in this opinion.

Plaintiff asserts constitutional violations of the First, Fifth, and Fourteenth Amendments of the Constitution via 42 U.S.C. § 1983, violations of 42 U.S.C. § 1985, and violations of Article I, Sections 8, 19, and 21 of the Tennessee Constitution [*Id.* at ¶¶ 44—48].

## II.    <u>Standards of Review</u>

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."  *Twombly*, 550 U.S. at 555.  "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6)[6] motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the

---

[6]Although some of the motions to dismiss also reference Rule 12(c), motions for judgment on the pleadings and motions to dismiss are reviewed under the same standard.  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).  That is, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *Id.*

complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is proper when a federal court lacks subject matter jurisdiction. When subject matter jurisdiction is challenged, the party asserting jurisdiction bears the burden of establishing jurisdiction to survive a motion to dismiss. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Under Rule 12(b)(1), a motion to dismiss "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). A facial attack on the subject matter jurisdiction alleged in a complaint challenges the sufficiency of the pleading. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In reviewing a facial attack, the court takes the plaintiff's allegations in the complaint as true, similar to a Rule 12(b)(6) motion to dismiss. *Id.* A party making a factual attack on subject matter jurisdiction challenges the actual existence of the court's jurisdiction – a defect that may exist even though the complaint contains the formal allegations necessary to invoke jurisdiction. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). With a factual attack, no presumption of truthfulness applies to the

8

allegations and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

### III. <u>Analysis</u>

#### A. <u>Claims Under 42 U.S.C. § 1985</u>

Plaintiff has very generally alleged that "[d]efendant[s] and each state employee of defendants personally violated 42 U.S.C. § 1985" [Doc. 1 at ¶ 45]. The complaint contains no other allegations which specifically reference a § 1985 claim, although the complaint is rife with vague allegations of conspiracy, fraud, and deprivations of plaintiff's constitutional rights [*see, e.g., id.* at ¶¶ 5, 21, 25, 28, 37, 38, 40]. Plaintiff does not specify on which subsection of § 1985 she bases her claim and the Court declines to construct her arguments for her. *See, e.g., McPherson v. Kelsey*, 125 F.3d 989, 995—96 (6th Cir. 1997) ("[i]t is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to … put flesh on its bones").

Part one of § 1985 protects officers seeking to perform the duties of their office. 42 U.S.C. § 1985(1). Plaintiff has not alleged, nor could she, that she was an officer seeking to perform the duties of her office. Part two of § 1985 provides a civil remedy to an injured party to recover damages where two or more persons have engaged in a racially motivated conspiracy to obstruct the administration of justice in a state or territory of the United States. 42 U.S.C. § 1985(2); *Mason v. Stacey*, No. 4:07-cv-43, 2009 WL 803107, at *6 (E.D. Tenn. Mar. 25, 2009) (Mattice, J.). The complaint contains no allegations that any of the alleged acts were racially motivated. Part three provides a

civil remedy to an injured party to recover damages where two or more persons have engaged in a racially motivated conspiracy to deprive an individual of equal protection of the law or equal privileges and immunities of the law. 42 U.S.C. § 1985(3); *Mason*, 2009 WL 803107, at *6. Similarly, to prevail under § 1985(3), a plaintiff must show, among other things, that the defendants were motivated by class-based or racial animus. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994). The complaint contains no such allegations and therefore fails to state a claim under any part of § 1985 upon which relief could be granted. Further, as to the TBPR defendants, the Knox County Circuit Court and Knox County Chancery Court, and Judge Wimberly, the Eleventh Amendment prohibits suits against a state and its agencies under § 1985 and the individual defendants in their official capacities. *Abe v. Mich. Dep't of Consumer & Indus. Servs.*, 2000 WL 1176878, at *1 (6th Cir. Aug. 9, 2000); *Mason*, 2009 WL 803107, at *8. Plaintiffs' § 1985 claims against all defendants will be dismissed.

B.    Tennessee Constitutional Claims

As with the § 1985 claims, plaintiff generally alleges that all of the defendants "personally violated Article 1 section 8 and 19 of the Tennessee Constitution" and that they each "personally violated Article 1, section 21 of the Tennessee Constitution" [Doc. 1 at ¶¶ 47—48]. Tennessee does not recognize any private cause of action for violations of the Tennessee Constitution. *Williams v. Leatherwood*, 258 F. App'x 817, 824 (6th Cir. 2007); *Bowden Bldg. Corp. v. Tenn. Real Estate Comm'n*, 15 S.W.3d 434, 446 (Tenn. Ct. App. 1999); *Lee v. Ladd*, 834 S.W.2d 323, 325 (Tenn. Ct. App. 1992). Accordingly,

these claims will be dismissed against all defendants for failure to state a claim upon which relief can be granted.

      C.     <u>Motions to Dismiss by Defendants Board of Professional Responsibility of the Supreme Court, Sandy Garrett, Nancy Jones, James Anthony Vick, Kevin Balkwill, and Russell Willis [Docs. 4, 17][7]</u>

Section 8.1 of Tennessee Supreme Court Rule 9 provides that "[a]ny attorney admitted to practice law in this State … is subject to the disciplinary jurisdiction of the Court, the Board, panels, the district committees and hearing panels herein established, and the circuit and chancery courts of this State."  Pursuant to § 4.5 of Rule 9, the Board's authority includes the following:

> (a)    To consider and investigate any alleged ground for discipline or alleged incapacity of any attorney called to its attention, or upon its own motion, and to take such action with respect thereto as shall be appropriate to effectuate the purposes of this Rule. …

> (b)    To adopt written internal operating procedures to ensure the efficient and timely resolution of complaints, investigations, and formal proceedings, which operating procedures shall be approved by the Court, and to monitor Disciplinary Counsel's and the hearing panels' continuing compliance with those operating procedures. …

> (d)    To review, upon application by Disciplinary Counsel, a determination by the reviewing member of a district committee that a matter should be concluded by dismissal or by private informal admonition without the institution of formal charges.

> (e)    To privately reprimand, publicly censure or authorize the filing of formal charges against attorneys for misconduct. …

---

[7]Although Mr. Willis filed a separate motion from the other TBPR defendants, he raises many of the same defenses and the Court finds it appropriate to consider the motions collectively.

Pursuant to § 7.1 of Rule 9, the Supreme Court appoints an attorney to serve as Chief

Disciplinary Counsel for the TBPR. The Chief Disciplinary Counsel and staff have the

following relevant powers as set forth in § 7.3:

> (a)     To investigate all matters involving possible misconduct.
> (b)     To dispose of all matters involving alleged misconduct by
> recommendation to the reviewing district committee member of either
> dismissal or private informal admonition; by recommendation to the Board
> of either private reprimand, public censure or the prosecution of formal
> charges before a hearing panel; or by diversion in accordance with Section
> 13.    Except in matters requiring dismissal because the complaint is
> frivolous and clearly unfounded on its face or falls outside the Board's
> jurisdiction, no disposition shall be recommended or undertaken by
> Disciplinary Counsel until the accused attorney shall have been afforded
> the opportunity to state a position with respect to the allegations against the
> attorney.
> (c)     To present in a timely manner all disciplinary proceedings.
> (d)     To investigate and to present in a timely manner all proceedings with
> respect to petitions for reinstatement of suspended or disbarred attorneys or
> attorneys transferred to inactive status because of disability, or with respect
> to petitions for voluntary surrenders of law licenses.
> (e)     To file with the Court adequate proof of attorneys' pleas of nolo
> contendere or pleas of guilty to, or verdicts of guilt of, crimes pursuant to
> Section 22. …

As set forth above and in the complaint, all of the allegations against defendants

Garrett, Jones, Vick, Balkwill, and Willis relate to the performance of their duties as

Disciplinary Counsel for the TBPR.

### 1.    Eleventh Amendment Immunity

The TBPR defendants argue that the Eleventh Amendment bars this suit against

the TBPR and the TBPR defendants in their official capacities. It is well settled that the

Eleventh Amendment bars actions by citizens against their own state or one of its

agencies in federal court unless there has been a waiver by the state. *Welch v. Texas*

*Dep't of Highways & Public Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). It is also well settled that Tennessee has not waived its immunity under the Eleventh Amendment with respect to civil rights suits and cannot be sued, even for injunctive relief. Tenn. Code Ann. § 20-13-102(a); *Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986); *Am. Civil Liberties Union of Tenn. v. Tennessee*, 496 F. Supp. 218, 220 (M.D. Tenn. 1980). The TBPR is a board created by and under the supervision of the Tennessee Supreme Court which is unquestionably an arm of the state. *See Smith County Educ. Ass'n v. Anderson*, 676 S.W.2d 328, 333 (Tenn. 1984) (the licensing and regulation of attorneys practicing law in Tennessee is within the inherent authority of the judicial branch of government and the Supreme Court's rule making authority embraces the admission and supervision of members of the Bar). Accordingly, a suit against the TBPR is the equivalent of suing the State of Tennessee and is barred by the Eleventh Amendment.

To the extent that plaintiff has asserted claims against defendants Garrett, Jones, Vick, Balkwill, and Willis in their official capacities as Disciplinary Counsel for the TBPR, these claims are also barred by the Eleventh Amendment. A § 1983 claim against a state official in his or her official capacity is treated as a claim against the government itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Thus, the Eleventh Amendment bars official capacity claims for damages against state officials. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Moncier v. Jones*, 557 F. App'x 407, 409 (6th Cir.

2014).   The § 1983 official capacity claims for damages against defendants Garrett, Jones, Vick, Balkwill, and Willis will be dismissed.[8]

## 2.   "Persons" Under 42 U.S.C. § 1983

Section 1983 authorizes imposition of liability against a "person" who, acting under color of state law, violates another person's constitutional rights.   However, the term "person" in § 1983 does not include states, state agencies, or state employees sued in their official capacities.   *Will*, 491 U.S. at 71; *Howlett v. Rose*, 496 U.S. 356, 365 (1990) ("an entity with Eleventh Amendment immunity is not a 'person' within the meaning of § 1983").   Thus, plaintiff's § 1983 claims against the TBPR and the individual TBPR defendants in their official capacities fail to state a claim upon which relief can be granted.

## 3.   Quasi-Judicial/Prosecutorial Immunity

To the extent that plaintiff has asserted constitutional claims for damages against the defendants in their individual capacities, these claims are not barred by the Eleventh Amendment.   *Hafer v. Melo*, 502 U.S. 21, 30—31 (1991).   However, the defendants are entitled to absolute, quasi-judicial immunity because the conduct of which plaintiff complains occurred while the defendants were performing their official roles as

---

[8]Defendants also argue that the doctrine of sovereign immunity bars all state law claims against the TBPR and the individual TBPR defendants in their official capacities [Doc. 18 at pp. 8—9]. Other than the claims under the Tennessee Constitution [Doc. 1 at ¶¶ 47—48], discussed *supra*, it is unclear whether plaintiff has attempted to assert other state law claims.   To the extent that such claims could be ascertained from the complaint, the Court agrees that the doctrine of sovereign immunity would bar such claims against the TBPR defendants.   *See Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) ("[t]he States' immunity from suits in federal court applies to claims against a State by citizens of the same State … [t]he immunity also applies to actions against state officials sued in their official capacity for money damages") (citations omitted).

14

Disciplinary Counsel for the TBPR. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) ("Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these person are considered an arm of the judicial officer who is immune."); *Moncier*, 557 F. App'x at 409; *see Butz v. Economou*, 438 U.S. 478, 515 (1978) ("agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts").

The TBPR is charged with investigating complaints of attorney misconduct and the disciplinary counsel must prosecute "in a timely manner all disciplinary proceedings" before hearing panels, trial courts, and the Supreme Court. Tenn. S. Ct. R. 9, § 7.3. Thus, regardless of any alleged bad motives, the TBPR defendants were unquestionably acting in a prosecutorial role with respect to the allegations in the complaint and they are entitled to absolute immunity for any § 1983 or state common law claims for damages arising out of those duties. *Lomaz v. Hennosy*, 151 F.3d 493, 498, n.7 (6th Cir. 1998) ("Absolute prosecutorial immunity is not defeated by a showing that a prosecutor acted wrongfully or even maliciously"); *Shell v. State*, 893 S.W.2d 416, 421 (Tenn. 1995) (prosecutors are immune from actions for malicious prosecution under both § 1983 and common law).

    4.    *Younger* Abstention

Plaintiff's request for injunctive relief is as follows:

> That this Court enjoin any policy, practice, order, conduct or action by Defendants deemed to be in violation of the federal and state constitutions and award court costs and attorney fees. Specifically, that this Court void

any actions by state actors not in conformity with federal law and set aside all improper legal actions and order the defendants to immediately cease and desist from ongoing harassment and intimidation.

[Doc. 1 at p. 27, ¶ 2]. First, the Court notes that any request for injunctive relief against defendant Jones is moot as she is no longer the Chief Disciplinary Counsel. *Moncier*, 557 F. App'x at 410. Further, and more importantly, the *Younger* abstention doctrine instructs that the Court should refrain from interfering with pending state judicial proceedings, including civil enforcement actions where injunctive relief is sought. *Younger v. Harris*, 401 U.S. 37, 43—44 (1971); *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074 (6th Cir. 1998). *Younger* abstention applies when the state proceeding (1) is currently pending; (2) involves an important state interest; and (3) affords the plaintiff an adequate opportunity to raise constitutional claims. *Id.*; *Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

In the present case, it is undisputed that at least some of plaintiff's claims involve an ongoing disciplinary proceeding [Doc. 1 at ¶¶ 20—21]. State bar disciplinary proceedings are considered to be "an adjudicative, rather than a legislative, function." *Danner v. Bd. of Prof. Resp.*, 327 F. App'x 577, 578 (6th Cir. 2009) (quoting *Squire v. Coughlan*, 469 F.3d 551, 556 (6th Cir. 2006)). On an identical issue, the Sixth Circuit has concluded that the regulation and discipline of attorneys is an important state function and the disciplinary process provides for judicial review of allegations that the Board's findings violate constitutional provisions. *Id.*; Tenn. R. S. Ct. 9, § 33.1(b) (the decision of a hearing panel may be appealed to consider if the panel decision is "in violation of constitutional or statutory provisions"); *see Middlesex*, 457 U.S. at 434 (state "has an

16

extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses"); *Fieger v. Thomas*, 74 F.3d 740, 745 (6th Cir. 1996) ("Federal courts must be careful to accord lawyer discipline proceedings the proper degree of deference."). Accordingly, the pending disciplinary proceedings against plaintiff satisfy the three *Younger* criteria and the Court will abstain from any action regarding those proceedings, including the request for injunctive relief.

5.     Statute of Limitations

The TBPR defendants also argue that, to the extent the complaint alleges § 1983 claims or claims for malicious prosecution more than one year prior to filing, those claims are time-barred. Tenn. Code Ann. § 28-3-104(a)(3) (one year statute of limitations for civil action for compensatory or punitive damages under the federal civil rights statutes); *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005) (same); Tenn. Code Ann. § 28-3-104 (a)(1) (one year statute of limitations for claims for malicious prosecution). The Court agrees. To the extent that plaintiff's allegations encompass § 1983 or malicious prosecution claims more than one year prior to the initiation of this case, those claims are time-barred.

For all of these reasons, the TBPR defendants' motions to dismiss [Docs. 4, 17] will be **GRANTED**.[9]

D.     Motions to Dismiss by Defendants Knox County Chancery Court and Knox County Circuit Court [Docs. 6, 21]

---

[9]The TBPR defendants also argue that they are entitled to qualified immunity [Doc. 18 at pp. 11—17]. However, in light of the Court's conclusions on the defendants' other arguments, the Court need not resolve this issue.

The Knox County Chancery Court and the Knox County Circuit Court have filed separate, but nearly identical, motions to dismiss [Docs. 6, 21]. Both defendant courts argue that they are entities of the State and therefore are immune from suit under the Eleventh Amendment. Further, as state entities, the defendant courts note that a "person" under § 1983 does not include the states or state agencies. Finally, the defendant courts contend that, to the extent that the complaint seeks to set aside orders of the courts, subject matter jurisdiction belongs only to the United States Supreme Court under the *Rooker-Feldman* doctrine [Doc. 7 at pp. 3—5; Doc. 22 at pp. 4—5].

### 1. Eleventh Amendment Immunity

As discussed *supra*, the Eleventh Amendment bars actions by citizens against their own state or one of its agencies in federal court unless there has been a waiver by the state. *Welch*, 483 U.S. at 472; *Pennhurst State School & Hosp.*, 465 U.S. at 100. Tennessee has not waived its immunity under the Eleventh Amendment with respect to civil rights suits and cannot be sued, even for injunctive relief. Tenn. Code Ann. § 20-13-102(a); *Berndt*, 796 F.2d at 881; *Am. Civil Liberties Union of Tenn.*, 496 F. Supp. at 220. The Tennessee Constitution establishes "[t]he judicial power of this State shall be vested in one Supreme Court and in such Circuit, Chancery and other inferior Courts as the Legislature shall from time to time, ordain and establish." Tenn. Const. Art. VI, § 1; *Indus. Dev. Bd. of City of Tullahoma v. Hancock*, 901 S.W.2d 382, 384 (Tenn. Ct. App. 1995) (Article 6, § 1 of Tennessee Constitution authorizes creation of chancery courts). The State of Tennessee is divided into thirty-one judicial districts, including the Sixth Judicial District in Knox County. Tenn. Code Ann. § 16-2-506(6)(A). The Court

concludes that the Knox County Chancery Court and the Knox County Circuit Court are state-created entities such that a suit against them is a suit against the State of Tennessee. Accordingly, the claims against these defendants are barred by the Eleventh Amendment.

### 2. "Persons" Under § 1983

Similarly, as also discussed *supra*, section 1983 authorizes imposition of liability against a "person" who, acting under color of state law, violates another person's constitutional rights. However, the term "person" in § 1983 does not include states, state agencies, or state employees sued in their official capacities. *Will*, 491 U.S. at 71; *Howlett*, 496 U.S. at 365. Thus, plaintiff's § 1983 claims against the Knox County Chancery Court and the Knox County Circuit Court fail to state a claim upon which relief can be granted.

### 3. *Rooker-Feldman* and *Younger* Abstention

Both defendants note that the complaint asks the Court to enjoin any unconstitutional "order" and to "set aside all improper legal actions" [Doc. 1 at p. 27, ¶ 2]. However, as both defendants correctly argue, this Court is without authority to review the orders or actions of the defendants' judicial proceedings. Any such review can only be obtained by appeal to the United States Supreme Court. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415—16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983). To the extent the complaint seeks to enjoin ongoing proceedings of these defendant courts, the Court must abstain from such action pursuant to the *Younger* doctrine discussed *supra*.

### 4. Failure to State a Claim

19

Finally, the Court observes that both the "Knox County Chancery Court" and the "Knox County Circuit Court" are named as defendants in the style of the complaint [Doc. 1]. In the prefatory allegations, plaintiff alleges that her case arises "from a documented history of hostile, harassing activity by … the Knox County Circuit Court [and] the Knox County Chancery Court," among others [*Id.* at ¶ 2]. In the identification of parties, both defendant courts are identified as "acting in their official capacities and under color of state law" [*Id.* at ¶ 13]. However, there are no other allegations in the complaint as to these two defendants. There are allegations as to certain employees of the two courts and there are references to prior cases in those courts, but the complaint contains no allegations of acts or omissions *by the courts* as defendants.

As noted above, Rule 8 requires that the allegations of the complaint "'give … fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555. While plaintiff is not required to present detailed factual allegations, she is required to identify some grounds for relief that is "more than labels and conclusions." *Id*. The bare allegations against these defendants can only be described as factually unsupported conclusions or "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. In short, plaintiff has failed to allege any plausible claim for relief against these defendants.

For all of these reasons, the motions to dismiss by defendants Knox County Chancery Court and Knox County Circuit Court [Docs. 6, 21] will be **GRANTED** and the claims against them will be dismissed.

E.      Motions to Dismiss by Defendants Cathy Shanks and Frankie Holt [Docs. 10, 12]

Defendants Frankie Holt and Cathy Shanks have filed separate, but very similar, motions to dismiss [Docs. 10, 12].  The substantive allegations against defendant Holt are that she interfered with the filing of documents, the designation of records, and the filing of documents formally into the record; that she destroyed documents, manipulated the filing of records and withheld documents from proper filing in the record; and that she illegally removed documents from the court record [Doc. 1 at ¶ 39].  The substantive allegations against defendant Shanks are that she agreed to disburse money without notifying or paying on liens perfected by the plaintiff and that this deprived plaintiff of property without due process [*Id*. at ¶ 40].

1.      Quasi-Judicial Immunity

Both defendants first argue that "to the extent" they were relying on or complying with a court order, they are entitled to absolute quasi-judicial immunity [Doc. 11 at p. 3; Doc. 13 at p. 3].  There are no allegations in the complaint that the defendants were acting in accordance with a court order.  The Court must accept the allegations as true for purposes of the motions to dismiss.  Accordingly, in the absence of any proof on this issue, the Court cannot make a determination as to whether the defendants are entitled to any type of quasi-judicial immunity.

2.      Official Capacity Claims

Defendants have been sued in their official and individual capacities.  They next argue that the official capacity claims should be dismissed because the complaint fails to

allege that their actions were the result of a Knox County policy or custom [Doc. 11 at pp. 4—5; Doc. 13 at pp. 4—5]. When a county defendant is sued in her official capacity, the Court must proceed as if the plaintiff has in fact sued the county itself, in this case Knox County, Tennessee. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Brandon v. Holt*, 469 U.S. 464, 471 (1985); *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690, n.55 (1978). Given that, in order to prevail, the plaintiff must demonstrate that the alleged violation of her constitutional rights resulted from acts representing official policy or custom adopted by Knox County, Tennessee. *Monell*, 463 U.S. at 690—91; *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245—46 (6th Cir. 1989). Nothing in the complaint alleges that defendants Holt or Shanks acted pursuant to a custom or policy of Knox County. Accordingly, the official capacity claims against these defendants will be dismissed. Further, as defendants argue [Doc. 11 at p. 10; Doc. 13 at p. 10], plaintiff cannot recover punitive damages against a defendant in her official capacity. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

3.     Errors in the Complaint

Defendants Shanks and Holt argue that the complaint misstates that they were acting under color of state law "pursuant to T.C.A. 8-23-207" and mistakenly alleges that they are state employees, when they are employees of Knox County [Doc. 11 at p. 3; Doc. 13 at p. 3]. Defendants are correct that court clerks are considered to be county officials. *Jordan v. Knox County*, 213 S.W.3d 751, 782 (Tenn. 2007). County officials, however, are "persons" subject to suit under § 1983, *Monell*, 436 U.S. at 690, which is the primary basis for plaintiff's claims. Similarly, defendant Shanks argues that the

22

complaint erroneously alleges that she disbursed money from the "Knox County Chancery Court's" escrow account, when she is the Knox County Circuit Court Clerk [Doc. 11 at p. 5; Doc. 1 at ¶ 40]. This factual error does not alter the plausibility of plaintiff's civil rights claim.

The defendants next raise a series of arguments that are more appropriately set out as responses in an answer, rather than bases for dismissal. Defendants argue that the allegations against them in paragraphs 39 and 40 of the complaint are conclusory and fail to state a claim upon which relief can be granted [Doc. 11 at p. 6; Doc. 13 at p. 5]. The Court disagrees. The plaintiff has alleged that defendant Holt interfered with the filing of documents and the designation of court records, that she destroyed documents, that she manipulated the filing of records, that she withheld documents from proper filing, and that she illegally removed documents from the court record [Doc. 1 at ¶ 39]. These are specific factual allegations, rather than conclusions. The plaintiff has alleged that defendant Shanks disbursed money from a court escrow account without notice or paying on plaintiff's liens on the money [*Id.* at ¶ 40]. Again, these are specific factual allegations, rather than conclusions. The Court must accept these allegations as true for purposes of the instant motion.

The defendants argue that, "to the extent" plaintiff attempts to allege fraud or mistake, she has not done so with particularity required by Fed. R. Civ. P. 9 [Doc. 11 at p. 6; Doc. 13 at pp. 5—6]. Neither paragraphs 39 nor 40 of the complaint, the substantive allegations against defendants Holt and Shanks, contain any allegations of fraud or mistake. If plaintiff attempts to pursue such claims in the future, defendants may raise

this defense at that time. Similarly, defendant's arguments as to paragraphs 41—48 of the complaint are more appropriately raised in an answer. Defendants' arguments as to plaintiff's claims under the Tennessee Constitution are addressed *supra* and, for the same reasons, those claims against defendants Holt and Shanks will be dismissed. The § 1985 claims against all defendants are discussed *supra* and also will be dismissed.

Defendants next argue that plaintiff's request for injunctive relief is too vague and that "to the extent" it seeks to set aside orders of the Knox County Chancery Court or the Knox County Circuit Court, such request relief can only be obtained through the United States Supreme Court pursuant to the *Rooker-Feldman* doctrine [Doc. 11 at pp. 8—10; Doc. 13 at pp. 7—9]. Defendants are correct and, as discussed above, this Court is without authority to review the orders or actions of prior judicial proceedings.[10]

### 4. Qualified Immunity

Defendants argue that they are entitled to qualified immunity because the alleged conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known [Doc. 11 at pp. 11—13; Doc. 13 at pp. 10—12]. In support of this argument, defendants recite an outline of the law of qualified immunity without any application of that law to the allegations of the complaint. The doctrine of qualified immunity shields "'government officials performing discretionary functions ...

---

[10]As discussed in the context of defendant Vaughan's motion, *infra*, the *Rooker-Feldman* doctrine bars this Court's review of the state court judgments themselves, but does not bar independent claims based on acts that occurred in the course of judicial proceedings. *See, e.g., Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 606 F.3d 301, 310 (6th Cir. 2010). To the extent that the "source of the injury" that plaintiff alleges as to defendants Holt and Shanks consists of acts *leading up to* the judgments in their respective courts, those claims would not be barred by the *Rooker-Feldman* doctrine.

from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ewolski v. City of Brunswick,* 287 F.3d 492, 501 (6th Cir. 2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  There are two parts to the qualified immunity analysis: (1) whether there was a violation of the plaintiff's statutory or constitutional right(s), and (2) whether the right was clearly established to a reasonable person at the time of the challenged conduct.  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011).

Plaintiff has alleged that these and other defendants have violated her constitutional rights under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution and she has alleged acts by these defendants such as interfering with the filing of court records, destroying court documents, removing documents from the court record, and disbursing money from an escrow account without paying perfected liens.  In the absence of additional facts and citation to factually analogous authority, the Court simply cannot make an educated, fact-specific ruling on the qualified immunity question at this time.  The Court notes that the Rule 12(b)(6) motion is meant to challenge only the sufficiency of pleading and that the qualified immunity issue might be best left to a later stage of litigation when there are adequate facts with which to support more well-developed arguments which touch upon all aspects of the qualified immunity inquiry.  *See Grose v. Caruso,* 284 F. App'x 279, 283 (6th Cir. 2008) (stating that "[d]ismissals on the basis of qualified immunity are generally made pursuant to Fed. R. Civ. P. 56 summary judgment motions, not 12(b)(6) sufficiency of pleadings motions" and pointing

out that the plaintiff "has not yet had an opportunity to initiate discovery in order to develop a factual record upon which a court may then determine whether dismissal based on qualified immunity is proper."). The defendants' motions to dismiss will be denied as to their claim of qualified immunity.

## 5. Motion for More Definite Statement

Finally, and in the alternative, defendants Shanks and Holt move for a more definite statement pursuant to Fed. R. Civ. P. 12(e) [Doc. 11 at pp. 13—14; Doc. 13 at pp. 12—13]. Rule 12(e) of the Federal Rules of Civil Procedure provides, "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The granting of these motions is generally disfavored by district courts, given the liberal notice pleading standards of federal civil procedure and the accompanying nature of pretrial discovery. *See, e.g., Fed. Ins. Co. v. Webne,* 513 F. Supp. 2d 921, 924 (N.D. Ohio 2007) ("Federal courts generally disfavor motions for more definite statements. In view of the notice pleading standards of Rule 8(a)(2) and the opportunity for extensive pretrial discovery, courts rarely grant such motions."). A motion under Rule 12(e) should not be granted unless the complaint is "'so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.'" *Shirk v. Fifth Third Bancorp,* No. 05-cv-049, 2008 WL 4449024, *8 (S.D. Ohio Sept. 26, 2008) (quoting *Kok v. First Unum Life Ins. Co.,* 154 F. Supp. 2d 777, 781–82 (S.D.N.Y. 2001)). Accordingly, if the complaint meets the notice

pleading requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure, the motion should be denied. *Shirk*, 2008 WL 4449024, at *8.

The Court finds that the complaint, although confusing and imprecise, meets the requirements of Fed. R. Civ. P. 8(a) as to these two defendants and a more definite statement is not warranted.  The complaint contains the basis for this Court's jurisdiction, a basis for relief under § 1983, and a demand for relief.  A more definite statement is only warranted in extreme circumstances where the complaint is unintelligible, not simply because defendants seek greater detail.  Thus, the defendants' request for a more definite statement will be denied.

The motions to dismiss by defendants Shanks and Holt will be **GRANTED in part** and **DENIED in part**, whereby the § 1983 official capacity claims will be dismissed, the claims under § 1985 will be dismissed, and the claims under the Tennessee Constitution will be dismissed.  The case will proceed as to the § 1983 individual capacity claims.

     F.     Defendants Frances Rodgers' and Vearl Bible's Motion to Dismiss [Doc. 15

Defendants Frances Rodgers and Vearl Bible have filed a joint motion to dismiss [Doc. 15], a supporting memorandum [Doc. 16], and an amendment to their motion in which they assert additional grounds for the motion [Doc. 27].  First, these defendants argue that the complaint contains only general allegations of conspiracy that are insufficient to establish a plausible claim as required by *Twombly* [Doc. 16 at pp. 2—3].  The defendants also argue that any claim based on their testimony in prior judicial

proceedings fails to state a claim because such testimony is absolutely privileged [*Id*. at p. 3].[11]

As described initially, plaintiff represented defendants Rodgers and Bible in several prior actions, including a wrongful death case. Defendants Rodgers and Bible are identified in the complaint as acting in conspiracy with former Judge Harold Wimberly, also a co-defendant, to deprive plaintiff of a fair hearing and to deprive her of earned income without due process [Doc. 1 at ¶ 14]. Much of the allegations in the complaint identify defendants Rodgers and Bible as the beneficiaries of the alleged conspiracy [*see, e.g.*, *id*. at ¶ 18—19, 29—30], but the complaint contains little beyond general allegations of their participation in the conspiracy. Defendants Rodgers and Bible allegedly filed a lawsuit in which they falsely alleged that she did not give them certain tissue slides and expert witness documents from the wrongful death case [*Id*. at ¶ 34]. Defendants also allegedly participated in a fraudulent default hearing by perjured testimony and by creating a false court record [*Id*. at ¶ 37]. There are no other allegations of acts or omissions by defendants Rodgers and Bible. The general allegations that the defendants participated in the conspiracy are legal conclusions, not specific factual allegations. *See Twombly*, 550 U.S. at 555. Thus, the only factual allegations against these defendants are that they filed a false lawsuit and they gave false testimony.

### 1.    Absolute Immunity

---

[11]Defendant Bible also argues that he never received service of process as required by Fed. R. Civ. P. 4 [Doc. 15 at ¶ 3]. In light of the Court's conclusions as to the defendants' arguments on the merits, the Court need not resolve this issue.

It is well settled that witnesses in a judicial proceeding are entitled to absolute immunity for their testimony. *Briscoe v. Lahue*, 460 U.S. 325, 335 (1983); *Alioto v. City of Shively, Ky.*, 835 F.2d 1173, 1174 (6th Cir. 1987) ("all witnesses – police officers as well as lay witnesses – are absolutely immune from liability based upon their testimony in judicial proceedings"). This immunity also applies to alleged conspiracies to give false testimony. *Alioto*, 835 F.2d at 1174; *Franklin v. Terr*, 201 F.3d 1098, 1102 (6th Cir. 2000) (absolute immunity for conspiracy to present a witness's own or other witness's perjured testimony). Thus, the plaintiff cannot state a § 1983 claim based on the defendants' testimony, even if false, in a prior judicial proceeding.

2.    Failure to State a Plausible Claim for Relief

With respect to the second allegation, the complaint alleges that these defendants participated in the conspiracy by "falsely filing a lawsuit" in which they alleged that they did not have tissue slides and expert witness documents from the wrongful death case [Doc. 1 at ¶ 34]. While it is unclear exactly what "falsely filing a lawsuit" means, the Court interprets it as filing a lawsuit with which the plaintiff disagreed or believed the allegations to be without merit. The Supreme Court has noted that "[r]esorting to the courts and being on the winning side of a lawsuit" does not establish a conspiracy under § 1983. *Dennis v. Sparks*, 449 U.S. 24, 28 (1980); *Smith v. Johnston*, No. 98-1034, 1999 WL 137619, at *3 (6th Cir. Mar. 5, 1999). A plaintiff must plead the conspiracy with some degree of specificity. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Moldowan v. City*

*of Warren,* 578 F.3d 351, 395 (6th Cir. 2009); *Gutierrez v. Lynch,* 826 F.2d 1534, 1538 (6th Cir. 1987).

The conspiracy allegations against defendants Rodgers and Bible are sparse, vague, and conclusory. The allegation that the defendants acted in concert with their current attorney and co-defendant Vaughan to obtain money damages is nothing more than the type of concerted action which is incident to every civil action. There is no allegation of an agreement or single plan and an overt action committed in furtherance of the conspiracy. Accordingly, the Court finds that plaintiff has failed to state a claim for relief against these defendants.

Alternatively, defendants Rodgers and Bible argue that the Court lacks subject matter jurisdiction in this case pursuant to the *Rooker-Feldman* doctrine [Doc. 27 at ¶ 5]. To the extent that the plaintiff seeks review of state court judgments, this Court is without authority to review the orders or actions of state court proceedings. Any such review can only be obtained by appeal to the United States Supreme Court.[12] *Rooker,* 263 U.S. at 415—16; *Feldman,* 460 U.S. at 476. To the extent the complaint seeks to enjoin ongoing state court proceedings, the Court must abstain from such action pursuant to the *Younger* doctrine discussed *supra.*

---

[12]As discussed in the context of defendant Vaughan's motion, *infra*, the *Rooker-Feldman* doctrine bars this Court's review of the state court judgments themselves, but does not bar independent claims based on acts that occurred in the course of judicial proceedings. *See, e.g., Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 606 F.3d 301, 310 (6th Cir. 2010). To the extent that the "source of the injury" that plaintiff alleges as to defendants Rodgers and Bible consists of acts *leading up to* the judgment against her, those claims would not be barred by the *Rooker-Feldman* doctrine. However, in light of the Court's conclusions as to the only two allegations against these defendants, the Court need not resolve this issue.

For all of these reasons, the motion to dismiss by defendants Rodgers and Bible [Doc. 15] will be **GRANTED** and the claims against them will be dismissed.

G.     Defendant Harold Wimberly's Motion to Dismiss [Doc. 20]

Defendant and former Knox County Circuit Court Judge Harold Wimberly has filed a motion to dismiss [Doc. 20] the claims against him on several grounds, including Eleventh Amendment immunity, absolute judicial immunity, and *Younger* abstention.

Judge Wimberly is sued in both his official and individual capacities and is identified in the complaint as being part of a conspiracy with defendants Vaughan, Rodgers, Bible, and Hood and McMasters to deprive plaintiff of a fair hearing and earned income [Doc. 1 at ¶ 14]. All of the allegations against Judge Wimberly appear to arise from the case against plaintiff over which he presided. Attached to Judge Wimberly's motion is a Tennessee Court of Appeals decision in the case of *Frances G. Rodgers, et al. v. Yarboro A. Sallee*, No. E2013-02067-COA-R3-CV, which outlines the general nature of the case [Doc. 19-1]. Defendants Rodgers and Bible sued plaintiff to recover fees paid to plaintiff during her representation of them as well as for punitive damages [*Id*. at p. 2]. A default judgment was entered against plaintiff, including an award of punitive damages [*Id*.]. Judge Wimberly denied plaintiff's request to set aside the default judgment and later recused himself from the case [*Id*. at p. 3]. On appeal, the Tennessee Court of Appeals determined that Judge Wimberly should not have entered certain orders while plaintiff's motion to recuse was pending, vacated the trial court's denial of plaintiff's motion to set aside the default judgment, and remanded the case for further proceedings

[*Id*. at pp. 7—9]. Notably, for purposes of the instant case, the Court of Appeals decision was entered February 13, 2015, while this case was pending.

As set forth in the complaint, Judge Wimberly is alleged to have done the following: he conspired with defendant Vaughan to hold a hearing of which plaintiff had no notice; he refused to follow the law; he held a fraudulently conducted default hearing; he did not apply the correct law or legal procedures; he failed to bifurcate the hearing into general and punitive damages; he failed to apply the correct standards to the different hearings; he refused to set aside a judgment against plaintiff; he conspired to create a false court record that placed plaintiff in a negative light; he verbally attacked plaintiff in four hearings; he misstated the facts on the record; he engaged in ex parte communications with defendant Vaughan; he failed to follow the law regarding recusal; and he refused to dismiss the lawsuit against plaintiff [*Id*. at ¶¶ 37—38].

1.    <u>Eleventh Amendment Immunity</u>

Judge Wimberly first argues that any claim for damages against him in his official capacity is barred by the Eleventh Amendment because he is a state official [Doc. 20 at pp. 6—7]. There is no doubt in this case that Judge Wimberly is a state employee. *See* Tenn. Const. art. VI, § 4; Tenn.Code Ann. § 8–42–101(3)(A); Tenn.Code Ann. § 16–10–201; Tenn.Code Ann. § 17–1–106. To the extent, therefore, that plaintiff seeks monetary damages from Judge Wimberly in his official capacity, she seeks damages from the State of Tennessee and the action is barred by the Eleventh Amendment unless one of the recognized exceptions to Eleventh Amendment immunity exists. The two exceptions to Eleventh Amendment immunity from suits for monetary damages against states are: (1)

32

where Congress expressly abrogates the Eleventh Amendment in legislation, *Hoffman v. Connecticut Dept. of Income Maint.,* 492 U.S. 96, 101 (1989); and (2) where a state expressly waives immunity from suit for money damages in federal court. *Pennhurst State Sch. & Hosp.,* 465 U.S. at 99. Congress has not abrogated the Eleventh Amendment for claims arising under 42 U.S.C. § 1983, *Quern v. Jordan,* 440 U.S. 332, 341 (1979), and Tennessee has not waived its sovereign immunity with respect to suits under § 1983. *Berndt v. Tennessee,* 796 F.2d 879, 881 (6th Cir.1986). The Eleventh Amendment therefore bars any action against Judge Wimberly in his official capacity.[13]

### 2.     "Persons" Under 42 U.S.C. § 1983

Judge Wimberly next argues that, in his official capacity, he is not a "person" subject to suit under § 1983 [Doc. 20 at p. 7]. As discussed *supra*, the term "person" in § 1983 does not include states, state agencies, or state employees sued in their official capacities. *Will*, 491 U.S. at 71; *Howlett*, 496 U.S. at 365. Thus, plaintiff's § 1983 claims against Judge Wimberly in his official capacity fail to state a claim upon which relief can be granted.

### 3.     Absolute Judicial Immunity

Judge Wimberly next argues that he is immune from suit for his judicial acts [Doc. 20 at pp. 8—9]. The Court agrees. It is well settled that "judges defending against §

---

[13]Judge Wimberly also argues that the doctrine of sovereign immunity bars all state law claims against him in his official capacities [Doc. 20 at pp. 7—8]. Other than the claims under the Tennessee Constitution [Doc. 1 at ¶¶ 47—48], discussed *supra*, it is unclear whether plaintiff has attempted to assert other state law claims. To the extent that such claims could be ascertained from the complaint, the Court agrees that the doctrine of sovereign immunity would bar such claims against Judge Wimberly. *See Ernst*, 427 F.3d at 358 ("[t]he States' immunity from suits in federal court applies to claims against a State by citizens of the same State … [t]he immunity also applies to actions against state officials sued in their official capacity for money damages").

1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980) (quoting *Supreme Court of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 734—35 (1980)). This immunity "applies even when the judge is accused of acting maliciously and corruptly," *Pierson v. Ray*, 386 U.S. 547, 554 (1967), or as part of a conspiracy. *Kurz v. Michigan*, 548 F.2d 172, 174 (6th Cir. 1977). In fact, judicial immunity is overcome in only two sets of circumstances: (1) where the action complained of was not taken in the judge's judicial capacity and (2) where the action complained of, though judicial in nature, was taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11—12 (1991) ("judicial immunity is not overcome by allegations of bad faith or malice"). There is no allegation in the complaint that either set of circumstances is present in the instant action. As set forth above, the allegations against Judge Wimberly all arise from his acts in presiding over the lawsuit filed by defendants Rodgers and Bible against plaintiff and there is no allegation that he acted without jurisdiction. Thus, Judge Wimberly is absolutely immune from suit in both his official and individual capacity. *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007).

        4.     *Younger* Abstention

Judge Wimberly next argues that the Court should abstain from any action regarding the ongoing state court proceedings in *Rodgers v. Sallee* pursuant to the *Younger* abstention doctrine [Doc. 20 at pp. 9—12]. As discussed *supra*, the *Younger* abstention doctrine instructs that the Court should refrain from interfering with pending state judicial proceedings, including civil enforcement actions where injunctive relief is

sought. *Younger*, 401 U.S. at 43—44; *Carroll*, 139 F.3d at 1074. The record is clear that the proceedings in *Rodgers v. Sallee* are ongoing and that plaintiff may raise any defenses or constitutional claims as appropriate in those proceedings. Finally, the Court concludes that the state has a strong interest in regulating the relationship between attorneys and clients, including the financial arrangements for attorney's services. *See Middlesex*, 457 U.S. at 434 (state "has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses"). Accordingly, the three *Younger* criteria, outlined *supra*, are satisfied and the Court will abstain from interfering with the state court proceedings in *Rodgers v. Sallee*, including any request for injunctive relief.

For all the foregoing reasons, Judge Wimberly's motion to dismiss [Doc. 19] will be **GRANTED** and the claims against him will be dismissed.

> H.      Defendant Larry Vaughan's Motion to Dismiss, or in the Alternative, for Judgment on the Pleadings [Doc. 24]

Defendant Larry Vaughan has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) or, alternatively, for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Defendant Vaughan is a private attorney who took over the representation of defendants Rodgers and Bible in the wrongful death case originated by plaintiff.

Defendant Vaughan is identified in the complaint as part of a conspiracy with Judge Wimberly and defendants Rodgers and Bible to deprive plaintiff of a fair hearing and of earned income without due process [Doc. 1 at ¶ 14]. As with the allegations against defendants Rodgers and Bible, much of the allegations against defendant Vaughan are that he was one of the intended beneficiaries of the alleged conspiracy or

conspiracies [*see, e.g., id.* at ¶¶ 18—19, 29—30, 32, 34—35, 37]. Defendant Vaughan is alleged to have filed "false lawsuits and false complaints" to steal fees earned by plaintiff [*Id.* at ¶ 18]. Defendant Vaughan allegedly filed a "false complaint" against plaintiff at defendant Jones' request [*Id.* at ¶ 27]. Defendant Vaughan allegedly approached unnamed attorneys who represented plaintiff and tried to scare them and intimidate them by stating "no one would work with them" if they assisted plaintiff, that "the whole state was targeting" plaintiff, and they "didn't want to be in the same boat" as plaintiff [*Id.* at ¶ 28]. Plaintiff claims that defendant Vaughan "falsely allege[d]" in an ethics complaint that defendants Rodgers and Bible did not receive tissue slides when the slides were in the possession of defendants Vaughan, Rodgers, and Bible [*Id.* at ¶ 33]. Defendant Vaughan "falsely fil[ed] a lawsuit" claiming that he, Rodgers, and Bible did not have tissue slides and expert opinion documents from the wrongful death case in order to get her fees [*Id.* at ¶ 34]. Defendant Vaughan allegedly conspired with Judge Wimberly to hold a hearing without notice to plaintiff and engaged in a "fraudulently conducted default hearing" [*Id.* at ¶ 37]. The complaint further alleges that defendants Vaughan, Rodgers and Bible engaged in fraud "through perjured testimony" [*Id.*]; it is unclear who allegedly gave the perjured testimony, but the Court presumes, without deciding, that plaintiff is trying to allege that the perjured testimony was given by Rodgers and/or Bible and presented by Vaughan as their attorney.

Defendant Vaughan first argues that this Court lacks subject matter jurisdiction over plaintiff's claims pursuant to the *Rooker-Feldman* doctrine [Doc. 25 at pp. 3—4]. Defendant argues that the things of which plaintiff complains – the loss of her right to

practice law, the loss of a lawsuit for damages against her, and the loss of attorney's fee liens she claimed against certain insurance proceeds – are the result of state court adjudications which she can challenge only in the U.S. Supreme Court. Alternatively, defendant Vaughan argues that the complaint fails to allege a plausible claim upon which relief can be granted [Doc. 25 at pp. 4—7].

1. *Rooker-Feldman*

The *Rooker–Feldman* doctrine emerged out of two Supreme Court cases, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983). "In both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 291 (2005). In effect, the plaintiffs in *Rooker* and *Feldman* sought to "appeal" their state cases to a federal district court.

In *Exxon Mobil*, the Supreme Court clarified the *Rooker–Feldman* doctrine and noted its limited scope, confirming its application "to cases of the kind from which the doctrine acquired its name: Cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of these judgments." *Exxon Mobil,* 544 U.S. at 284. The Sixth Circuit, following *Exxon Mobil,* has "applied the doctrine only when a plaintiff complains of injury from the state court judgment itself." *Coles v. Granville,* 448 F.3d 853, 858 (6th Cir. 2006). In other words, the *Rooker–Feldman* doctrine applies "when a plaintiff asserts before a federal district court that a

37

state court judgment itself was unconstitutional or in violation of federal law." *McCormick v. Braverman,* 451 F.3d 382, 395 (6th Cir. 2006).

The Court determines "whether *Rooker–Feldman* bars a claim by looking to the 'source of the injury the plaintiff alleges in the federal complaint.'" *Evans v. Cordray,* 424 F. App'x 537, 538 (6th Cir. 2011) (quoting *McCormick,* 451 F.3d at 393). *Rooker– Feldman* does not address potential conflicts between federal and state court orders. That is the purview of the doctrines of comity, abstention, and preclusion. Instead, *Rooker– Feldman* focuses on whether the state court decision caused the injury: "If the source of the injury is the state court decision then the *Rooker–Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury ... then the plaintiff asserts an independent claim." *McCormick,* 451 F.3d at 393.

The Sixth Circuit has also given guidance to the district courts as to how to differentiate between a claim that attacks a state court judgment, which is within the scope of the *Rooker–Feldman* doctrine, and an independent claim, which is not, and has adopted "an appropriate rule of thumb" from the Fourth Circuit's decision in *Davani v. Virginia Dept. of Transportation,* 434 F.3d 712 (4th Cir. 2006):

> The plaintiffs in *Rooker and Feldman* sought redress for an injury allegedly caused by the *state-court decision itself*-in *Rooker,* the plaintiff sought to overturn a state-court judgment in federal district court, and in *Feldman,* the plaintiffs sought to overturn a judgment rendered by the District of Columbia court in federal district court. In *Barefoot* [a pre-*Exxon Mobil* case], by contrast, we extended the *Rooker–Feldman* doctrine to apply in situations where the plaintiff, after losing in state court, seeks redress for an injury allegedly caused by the *defendant's actions.*

*McCormick,* 451 F.3d at 393 (quoting *Davani,* 434 F.3d at 717) (emphasis in original). The Sixth Circuit has cautioned that "the *Rooker-Feldman* doctrine is not a panacea to be applied whenever state court decisions and federal court decisions potentially or actually overlap." *Id.* at 395. Instead, as the *Exxon Mobil* Court noted, "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party … then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* at 392—93 (quoting *Exxon Mobil*, 125 S. Ct. at 1527).

Applying these principles to the instant complaint is no easy task. Plaintiff indeed complains of at least three state court proceedings, two of which are currently pending. To the extent that plaintiff seeks to set aside or enjoin the enforcement of those actions, such claims indeed would be barred by *Rooker-Feldman*. However, the allegations against defendant Vaughan focus on his conduct that, in part, *led up to* the state court judgments. *See Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 606 F.3d 301, 310 (6th Cir. 2010) (claims focused on the conduct of agency officials and social workers that led up to custody decision were not barred by *Rooker-Feldman*). With respect to defendant Vaughan, plaintiff complains that he conspired with the TBPR defendants and filed a false lawsuit and a false ethics complaint against her [Doc. 1 at ¶¶ 18, 27]. Defendant Vaughan allegedly tried to threaten plaintiff's attorneys such that she was without representation [*Id.* at ¶ 28]. Defendant Vaughan allegedly conspired with defendants Rodgers and Bible to falsely claim they did not have certain materials from the wrongful death case [*Id.* at ¶ 34]. Defendant also allegedly conspired with Judge

39

Wimberly to hold a hearing without providing notice to plaintiff and by presenting perjured testimony to the court [*Id.* at ¶ 37]. Thus, the allegations against defendant Vaughan focus on his allegedly improper conduct during the state court proceedings, rather than the outcome of the proceedings. The Court finds these allegations analogous to the facts in *Kovacic*, *Pittman v. Cuyhoga Cnty. Dep't of Children & Family Servs.*, 241 F. App'x 285, 288 (6th Cir. 2007), *Brown v. First Nationwide Mortg. Corp.*, 206 F. App'x 436, 439—40 (6th Cir. 2006); and *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 437 (6th Cir. 2006), whereby the injuries complained of were from actions prior to or in the course of the state court proceedings and not the state court decisions themselves. Accordingly, the Court does not find that the claims against Vaughan are barred by the *Rooker-Feldman* doctrine.

### 2. Failure to State a Claim

Defendant Vaughan argues that the allegations against him fail to meet the standards set by *Twombly* and *Iqbal* [Doc. 25 at pp. 4—7]. Defendant argues that the conspiracy allegations against him are conclusory and devoid of facts sufficient to be "plausible on its face." Defendant also suggests that the conspiracy alleged, involving him, his clients, and three different adjudicators in three different forums, "utterly defies common sense" [*Id.* at pp. 6—7].

Contrary to defendant's argument, the complaint contains some factual allegations against him. As noted above, defendant Vaughan is alleged to have filed a false ethics complaint and a false lawsuit, threatened plaintiff's attorneys, failed to notify plaintiff of a court hearing, and presented perjured testimony. While these allegations are not much,

40

they are "more than labels and conclusions" or a "formulaic recitation of the elements" and the Court is required to accept them as true for purposes of a motion to dismiss. Accordingly, the Court finds that plaintiff has stated a plausible claim for relief against defendant Vaughan. The motion to dismiss will be **GRANTED in part** whereby the claims under § 1985 and the Tennessee Constitution will be dismissed and **DENIED in part** as to the claims under § 1983.

I.  Motion to Dismiss by Defendants Hood & McMasters and Denise Hood [Doc. 28]

Defendants Hood & McMasters Court Reporting and Denise Hood have moved to dismiss the allegations against them on the grounds that the complaint contains no factual allegations against them and therefore fails to state a claim for relief as required by Rule 8(a)(2).

A review of the complaint reveals that these defendants are identified in the style of the case as "Hood and McMasters Court Reporting acting in concert with state actors and in individual capacity[,] Denise Hood, Owner" [Doc. 1 at p. 2]. The only allegations as to these defendants are as follows:

> The defendants, Hood and McMasters Court Reporting Firm engaged in conspiratorial action in their collusion satate [*sic*] actors such that this connection made them an instrumentality of the state actors. Wimberly, Vaughan, Rodgers, Bible and Hood and McMasters worked together to deprive petitioner of a fair hearing, as well as deprived her of earned income without due process under color of state law.

[*Id*. at ¶ 14].

As noted above, Rule 8 requires that the allegations of the complaint "'give … fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S.

at 555. The only allegations against Hood & McMasters are that they were somehow part of a conspiracy to deprive plaintiff of an unspecified fair hearing and earned income. There are no allegations at all regarding Denise Hood. While plaintiff is not required to present detailed factual allegations, she is required to identify some grounds for relief that is "more than labels and conclusions." *Id*. The bare allegations against these defendants can only be described as factually unsupported conclusions or "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Moreover, as noted *supra*, allegations of conspiracy must be pled with some degree of specificity and the allegations against these defendants fail to meet this standard. *Moldowan,* 578 F.3d at 395; *Gutierrez*, 826 F.2d at 1538. In short, plaintiff has failed to allege any plausible claim for relief against these defendants and the claims against them will be dismissed.

J.        Plaintiff's Request for an Injunction [Doc. 30]

Plaintiff seeks an injunction to lift the temporary suspension of her license to practice law in Tennessee. She argues that she will suffer irreparable injury if the suspension is not lifted and that she cannot obtain a fair and just hearing from the TBPR defendants. Plaintiff contends that injunctive relief would not violate the Anti-Injunction Act because the pending disciplinary hearing is "only administrative" [Doc. 30 at pp. 7—11].

The TBPR defendants have responded that plaintiff may not add new allegations about her temporary suspension to her complaint [Doc. 33 at p. 2]. The defendants also argue that the motion is barred by the Anti-Injunction Act, 28 U.S.C. § 2283, because disciplinary proceedings are adjudicative [*Id*. at pp. 2—4 (citing *Middlesex*, 457 U.S. at

42

433—34, and *Fieger*, 74 F.3d at 744)]. Further, the defendants argue that the Tennessee Supreme Court has exclusive jurisdiction over the licensing and discipline of attorneys in Tennessee [*Id.* at pp. 4—5].

While the TBPR defendants' arguments are meritorious, the Court observes that plaintiff's request is precisely what the *Younger* abstention doctrine, discussed *supra*, instructs the Court not to do: interfere with pending state judicial proceedings. *Younger*, 401 U.S. at 43—44 (1971); *Carroll*, 139 F.3d at 1074. As the Court has set forth above, the disciplinary proceedings against plaintiff are currently pending, they involve an important state interest, and they afford her an adequate opportunity to raise any constitutional claims. *Middlesex*, 457 U.S. at 432. All three of the criteria for abstention are satisfied and the Court will decline to intervene in the ongoing disciplinary proceedings.

Further, the Court observes that one of the factors to consider in deciding a motion for preliminary injunction is whether the movant has demonstrated a strong likelihood of success on the merits. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). In light of the Court's conclusions that plaintiff's claims against the TBPR defendants must be dismissed, it follows that she cannot show a likelihood of success on the merits and this finding is "fatal" to her request for injunctive relief. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). Accordingly, for all of these reasons, plaintiff's request for injunctive relief [Doc. 30] will be **DENIED**.

IV.    **Conclusion**

For the reasons set forth herein, the following motions to dismiss will be **GRANTED** and all claims against these defendants will be dismissed: the motion to dismiss by Russell Willis [Doc. 4]; the motion to dismiss by the Tennessee Board of Professional Responsibility, Sandy Garrett, Nancy Jones, James A. Vick, and Kevin Balkwill [Doc. 17]; the motion to dismiss by Knox County Chancery Court [Doc. 6]; the motion to dismiss by Knox County Circuit Court [Doc. 21]; the motion to dismiss by Frances Rodgers and Vearl Bible [Doc. 15]; the motion to dismiss by Judge Harold Wimberly [Doc. 19]; and the motion to dismiss by Hood & McMasters and Denise Hood [Doc. 28]. The motions to dismiss by Cathy Shanks [Doc. 10] and by Frankie Holt [Doc. 12] will be **GRANTED in part and DENIED in part** whereby the § 1983 official capacity claims will be dismissed, the claims under § 1985 will be dismissed, and the claims under the Tennessee Constitution will be dismissed; and the case will proceed as to the § 1983 individual capacity claims and the motions for definite statement will be **DENIED**. The motion to dismiss by Larry Vaughan [Doc. 24] will be **GRANTED in part** whereby the claims under § 1985 and the Tennessee Constitution will be dismissed and **DENIED in part** as to the claims under § 1983. Plaintiff's motion for an injunction [Doc. 30] will be **DENIED**. An appropriate order will be entered.

       s/ Thomas W. Phillips
       SENIOR UNITED STATES DISTRICT JUDGE